UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JAVED F. KHAN,

                               Plaintiff,

      -against-

LOUIS DEJOY, *as Postmaster General for the United States Postal Service*,

                               Defendant.
----------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
20-cv-1446 (EK)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this employment discrimination and retaliation action, on referral from the Honorable Eric R. Komitee for Report and Recommendation, is Defendant Postmaster General of the United States Postal Service Louis DeJoy's[1] ("Defendant" or the "USPS")[2] motion to dismiss Plaintiff *pro se* Javed Khan's ("Plaintiff" or "Khan") Second Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Defendant's Motion to Dismiss for Lack of Jurisdiction or, In the Alternative, Failure to State a Claim ("Defendant's Motion" or "Def. Mot."), Docket Entry ("DE") [29].

_____

[1] The Court notes that Plaintiff originally named Megan Brennan as the defendant in this action, but pursuant to Fed. R. Civ. P. 25(d), Postmaster General Louis DeJoy is automatically substituted for Postmaster General Brennan. The Clerk of the Court is respectfully directed to amend the caption accordingly.

[2] Khan's naming of the Postmaster General in his official capacity as the only Defendant in this matter – even though all of Plaintiff's allegations are against the USPS – is appropriate because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," as "the real party in interest is the entity." *Jain v. Brennan*, No. 18-cv-04446, 2019 WL 2451291, at *1 (S.D.N.Y. Apr. 25, 2019), *report and recommendation adopted*, 2019 WL 2992173 (S.D.N.Y. Jul. 9, 2019) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985)).

By way of Complaint dated March 18, 2020, later modified by an Amended Complaint dated August 13, 2020, and a Second Amended Complaint dated June 15, 2021, Plaintiff commenced this action alleging:  (i) discrimination on the basis of religion, race, and national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (ii) disparate treatment and hostile work environment in violation of Title VII; and (iii) discrimination on the basis of disability and retaliation in violation of Sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.  See* Complaint ("Compl."), DE [1]; First Amended Complaint ("FAC"), DE [8]; Second Amended Complaint ("SAC"), DE [26].  For the reasons set forth herein, the Court respectfully recommends that Defendant's Motion be granted in part and denied in part, and as to the dismissed claims, dismissal be without prejudice and leave to replead with a Third Amended Complaint that remedies certain deficiencies detailed below.

## I.    BACKGROUND

### A.    <u>Materials Considered by the Court</u>

In light of the liberal pleading standard applicable to *pro se* civil rights complaints in this Circuit, *see Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002), the Court draws the following facts from Plaintiff's Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition" or "Pl. Opp."), DE [35], in addition to the Second Amended Complaint.  *See Palompelli v. Smith*, No. 20-cv-8070, 2022 WL 624421, at *1 (S.D.N.Y. Mar. 3, 2022) (("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.") (internal citations omitted)).  Moreover, the Court considers

the factual allegations set forth in the original Complaint and its attachments, as well as the First Amended Complaint and its attachments, which includes his Notice of Charge of Discrimination (the "Notice of Charge") submitted by Plaintiff to a USPS Equal Employment Opportunity ("EEO") officer on April 3, 2019 (attached to the FAC), to the extent such allegations are not repeated in the Second Amended Complaint or Plaintiff's Opposition. *See id.*; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (noting that, for purposes of Fed. R. Civ. P. 12(b), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (citation omitted)).

**B. <u>Plaintiff's Initial Employment and the January 8, 2019 Incident</u>**

Unless otherwise indicated, the facts set forth herein are taken from the Complaint, FAC, SAC, Notice of Charge, and Plaintiff's Opposition, and are accepted as true for purposes of the instant motion.

Defendant is currently the Postmaster General of the USPS, a government agency organized and existing under the laws of the United States. *See* SAC ¶ 7. Plaintiff identifies as an Asian-Indian, Guyanese, and Muslim male, and is a resident of Suffolk County, New York who, from 2013 through 2020, was employed by the USPS as a mail carrier based out of its facilities in Southampton, New York, and Mt. Sinai, New York. *Id.* at ¶¶ 8-10.

Khan was assigned to the USPS's Southampton, New York facility (the "Facility") in May 2014, where he worked without incident until approximately

January 2019. *Id.* at ¶¶ 10-11.[3]  Plaintiff arrived at, and entered the Facility at approximately 7:00 a.m. on January 8, 2019, punched his timecard, and proceeded to his workstation. *Id.* at ¶ 12.  At approximately 7:30 a.m., Khan – a religious Muslim – began "listening to the Koran at [his] station on [his] phone at a low volume while the office radio was blaring music at the same time." *Id.* at ¶ 13.  Plaintiff was then "confronted by [his] supervisor," Anthony Boffa ("Boffa"), who allegedly "yelled at [Khan] and demanded that [he] turn off [his] prayers instantly." *Id.* at ¶¶ 13-14. Plaintiff admittedly "did not respond, and instead continued to listen to the Koran recording." *Id.* at ¶ 14.  Boffa then summoned a shop steward and union representative, though this time he (Boffa) demanded that Plaintiff turn off his phone and leave the Facility immediately. *Id.* at ¶ 15.  Khan then "questioned why [he] was being asked to leave," and "told [Boffa] that he should not have an issue with respect to the noise since other employees' music was playing loudly, and since those employees were not subjected to similar scrutiny." *Id.*  Plaintiff then requested that Boffa memorialize his request for Khan to vacate the premises in writing. *Id.*

Notwithstanding this request, and "without any further effort to speak to [him]," Boffa "called the Southampton Village Police Department, falsely alleging trespass – that [Khan] knowingly entered or remained unlawfully [at]" the Facility. *Id.* at ¶ 16.  Law enforcement officers arrived and questioned Khan, who recounted

---

[3] On October 26, 2018, Khan was prescribed medical marijuana for "chronic pain and muscle spasms caused by a work-related injury [he] sustained while working for the USPS." *Id.* at ¶ 45. On November 30, 2018, Plaintiff informed the USPS of this prescription and requested a reasonable accommodation, specifying that he "would not be using medical marijuana on the job" or at the Facility. *Id.* On December 22, 2018, Khan requested permission from the USPS to use medical marijuana to treat his injuries. *Id.* Plaintiff never received an official response from the USPS but was permitted to work for USPS while his accommodation request was pending. *Id.* at ¶¶ 45-46.

his interaction with Boffa to them. *Id.* at ¶ 17. Boffa apparently – and according to Plaintiff, falsely – informed the officers that Khan refused to leave the Facility "after being informed that he was suspended." *Id.* at ¶ 19.

### C. **Plaintiff's Arrest and the Subsequent Order of Protection**

The officers then arrested Plaintiff for criminal trespass and removed him from the Facility "in handcuffs[,] in front of his coworkers and customers." *Id.* Khan was subsequently "charged with criminal trespass in the third degree, a Class B misdemeanor." *Id.* at ¶ 18. Shortly after Plaintiff's arrest, and based primarily on the testimony of the Southampton USPS Postmaster Brian Sanders ("Sanders"), Southampton Village Justice Barbara Wilson issued an Order of Protection (the "OOP") against Khan, which prevented him from returning to the Facility until further notice, and required him to stay away from Boffa, Boffa's home, and the Facility, and forbade Khan "from communicating with [Boffa] by mail, email, telephone, etc." *Id.* at ¶¶ 20-21.

At Plaintiff's January 9, 2019 criminal court hearing, Justice Wilson instructed Sanders to inform Khan's criminal defense attorney once the investigation into Plaintiff's actions was completed, so the OOP could be vacated and Khan could return to work. *Id.* at ¶ 24. Notwithstanding Justice Wilson's instructions, Sanders failed to inform Plaintiff that the OOP was vacated on January 22, 2019. *Id.* at ¶¶ 24-25. Instead, for over six weeks, Khan did not return to work at the Facility because he believed that the OOP was in effect. *Id.* at ¶ 23.

On or about February 15, 2019, while still out, Khan first contacted a USPS EEO officer regarding Defendant's allegedly discriminatory conduct. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mem."), DE [29-1], at 16-17. Plaintiff neither addresses nor disputes that this meeting occurred, nor has either party provided the Court with any information or documentation regarding this meeting.

In any event, Plaintiff only learned that the OOP had been vacated from then-Suffolk County Assistant District Attorney Stacy Skorupa ("ADA Skorupa") at his March 5, 2019 criminal hearing. *Id.* at ¶ 25. ADA Skorupa confirmed to Khan that she had only learned about the OOP's vacatur from Sanders that day. *Id.* at ¶ 26. On March 11, 2019, Plaintiff sent Boffa a letter stating that he (Khan) had just learned about the OOP's vacatur and intended to return to work at the Facility, and further advising Boffa that the January 8, 2019 incident could not be addressed without Plaintiff's counsel present. *Id.* at ¶ 27.

### D. <u>Plaintiff's Attempted Return to Work and EEO Charges</u>

On March 27, 2019, Khan reported for work at the Facility, but learned that, "based on [his] failure to report for work between January 23, 2019, and March 27, 2019, [he] had accumulated twenty-four (24) unscheduled absences and supposedly had failed to retain [his] assigned schedule." *Id.* at ¶ 28. Shortly after Khan's attempt to return to work, Boffa and Sanders "attempted to compel" him to participate in a preliminary disciplinary interview ("PDI"), based in large part on Plaintiff's six-week absence from work due to his belief that the OOP was still in effect. *Id.* at ¶¶ 29-30.

Khan reiterated to Boffa and Sanders his refusal to participate in the PDI without his lawyer present, to which they responded that they "did not care about [Plaintiff's] legal representation," that they "did not care about responding to [his] lawyer," and "that [Khan's] lawyer had no standing to be present and what [Sanders] says is the law of the land." *Id.* at ¶ 31. Moreover, Boffa and Sanders rejected Plaintiff's offer to participate in the PDI without counsel, and denied Khan entry to the Facility. *Id.*

On or about April 3, 2019, Plaintiff filed a formal charge with the USPS EEO officer regarding Sanders's and Boffa's conduct. *See* SAC ¶ 4; Notice of Charge. The Notice of Charge states that Khan's claims were filed under Title VII and describes discrimination based on: "Race (Asian Indian), National Origin (Guyanese), Sex (Male), Religion (Muslim), Disability (disc narrowing, cervical spine, lumbar sprain, internal derangement right knee, right knee meniscus tear), and Retaliation (Prior EEO Activity)." *See* Notice of Charge at 1.

On April 8, 2019, Plaintiff picked up 15 pieces of mail that the USPS had sent to the Facility, which allegedly confirmed that Sanders: (i) "improperly attempted to have [Khan] removed from the premises on January 8, 2019"; and (ii) "had failed to properly inform [Plaintiff] that [he] could return to work" after the OOP's vacatur. *Id.* at ¶ 32. The USPS subsequently informed Sanders that Khan would be returning to work the next day. *Id.* When Plaintiff reported to the Facility the next day, however, Sanders refused Khan entry "unless [he] agreed to submit to questioning by [Sanders and Boffa] about unspecified 'matters.'" *Id.* at ¶ 33. Plaintiff reiterated to Sanders that he would not agree to private questioning by Sanders and Boffa but

would do so "out in the open and in front of staff." *Id.* at ¶ 33. In response, Sanders allegedly stated to Khan, "You can follow the instructions or not but whatever you choose has consequences," and then sent Plaintiff home for the day. *Id.*

Later that day, Khan called the Facility and informed the USPS employee who answered the phone that he would be out sick April 10-11 and would be out of work on April 12 due to a criminal court hearing. *Id.* at ¶ 35. On April 10, 2019, Sanders sent Plaintiff a letter threatening disciplinary action unless Khan called Sanders, because Sanders and Boffa "need[ed] to ask [Plaintiff] some questions. *Id.* at ¶ 36. In response to this letter, Khan's criminal defense attorney reiterated to the USPS's legal counsel, Stuart James, Esq. ("James"), that Plaintiff "should not be penalized for refusing to speak with anyone regarding the facts and circumstances surrounding the criminal charges." *Id.* at ¶ 37. On April 11, 2019, Khan's attorney advised James that Sanders's and Boffa's conduct caused Plaintiff "extreme emotional distress," which had prevented him from sleeping. *Id.* at ¶ 38.

### E. Dismissal of Plaintiff's Criminal Charges and the DRAC Inquiry

On April 12, 2019, the sole criminal charge against Khan was dismissed. *Id.* at ¶ 39. That same day, Plaintiff's defense counsel forwarded a notification of absence to James and Sanders, informing them that Khan would be out of work from April 13 to April 29, 2019, "on account of extreme emotional distress." *Id.* at ¶ 40. Plaintiff contemporaneously provided medical documentation from his treating physician, which stated that he "was under supervised medical care for [his] anxiety and stress." *Id.* That same day, the USPS requested that Khan provide information regarding his

medical diagnoses, care, and medical marijuana prescription to the USPS District Reasonable Accommodation Committee ("DRAC"). *Id.* at ¶¶ 40, 47. On April 15, 2019, the USPS sought Plaintiff's participation in a PDI on April 18, 2019, for an unspecified "Failure to Follow Instructions" charge. *Id.* at ¶ 41. Sanders threatened Khan's "removal from the Postal Service" if he failed to respond as instructed. *Id.* On April 17, 2019, Plaintiff's counsel again advised James that Sanders's conduct was not in good faith, and that Sanders's "harassment of [Khan] had created a hostile work environment, which exacerbated [his] adverse health condition." *Id.* at ¶ 42.

On June 4, 2019, the USPS renewed its request for information regarding Khan's medical marijuana prescription and sought this information from Plaintiff within three days. *Id.* at ¶ 48. Khan promised to provide the information as soon as possible, and "scheduled the necessary appointments with [his] prescribing physician in order to obtain this information." *Id.* On June 10, 2019, Plaintiff reported to the Facility, but was "turned away and placed on administrative leave for not having [provided] the requested information." *Id.* at ¶ 49. Sanders then directed Khan to report to work on June 14, 2019. *Id.* Plaintiff worked at the Facility on June 14-15, 2019, at which point Sanders placed him on paid administrative leave for the next ten months. *Id.* Notwithstanding Plaintiff's statement that he was "willing to work without the requested reasonable accommodation while [his] request was pending," Sanders refused to let Khan work and sent him home. *Id.*

When Khan agreed in June 2019 to work, the DRAC directed him to submit the following information to a USPS Occupational Health Nurse Administrator,

9

Latoya Brown-Hunt ("Brown-Hunt"), regarding his medical marijuana prescription: (i) documentation from his prescribing physician outlining the medical marijuana's purpose and use, including the "dosage, frequency of use and the mode of how it's taken (edible or vape/smoking)"; (ii) whether "there are any alternative forms of medication or treatment that [could] be prescribed"; and (iii) the prescribing physician's "assessment as to how long the effects of the marijuana will last" after consumption, as well as "any and all impairments of [his] ability to drive" or "any other impairments." *Id.* at ¶ 51. Plaintiff provided the DRAC with this documentation on July 16, 2019, and the DRAC did not request any additional documents. *Id.* at ¶ 53

On June 15, 2019, while working at the Facility, Khan observed a Caucasian, non-Muslim USPS employee standing next to Boffa while playing a recording at a volume similar to the volume at which Plaintiff had played his Koran recording on January 8, 2019. *Id.* at ¶ 43. This employee, however, was permitted to listen to the recording without being reprimanded, arrested, or removed from the Facility. *Id.* On August 9, 2019, Khan contacted the Chair of the DRAC, Daniel Pinto to inquire when the DRAC was going to schedule a hearing and was informed that the DRAC was "reviewing the documentation that [Plaintiff] sent in" with Brown-Hunt. *Id.* at ¶ 54.

### F. **Plaintiff's DRAC Hearing, USPS EEO Ruling, and Termination**

The DRAC scheduled Khan's hearing for September 20, 2019. *Id.* at ¶ 55. According to Plaintiff, "[n]one of the DRAC members had any familiarity with [his] medical records which were contained in the USPS's files" nor did Brown-Hunt

10

participate. *Id.* at ¶ 55. Nevertheless, during the meeting, a USPS attorney questioned Khan regarding his medical marijuana use. *Id.* at ¶ 56. In response, Plaintiff reminded the USPS that he had been "deemed partially disabled based on a U.S. Department of Labor Work Capacity Evaluation" and that the USPS "was in possession of all [of his] relevant medical history and…could retrieve all of [his] medical information through the USPS's Human Resources Management and/or its Injury Compensation Committee." *Id.* at ¶ 57.

On December 17, 2019, the USPS EEO officer issued a Notice of Right to Sue (the "Notice of Right to Sue") in relation to Plaintiff's charges, which Khan received on December 23, 2019. *See* SAC ¶ 5. The Notice of Right to Sue explained that Plaintiff could appeal the decision to the Director of the Office of Federal Operations within 30 days of receipt or file a civil action within "90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered." Notice of Right to Sue at 3.

On March 21, 2020, Sanders wrote a letter to Plaintiff, in which he "order[ed] Khan] to appear at [Sanders's] office" on Wednesday, March 25, 2020 at 8:00 for a PDI. *Id.* at ¶ 60. Plaintiff appeared for the meeting, during which Sanders was allegedly "violent towards [Khan], and screamed 'Mr. Khan, shut up.'" *Id.* at ¶ 61. Allegedly in fear for his life, Plaintiff "fled to the Southampton Village Police Department to file a police report." *Id.* On July 21, 2020, Khan received a letter from Sanders stating, "You are hereby notified that you will be removed from the U.S. Postal Service no sooner than thirty (30) days from the date of your receipt of this

notice."  *Id.* at ¶ 62.   Plaintiff's employment with the USPS was terminated thereafter.[4]  *Id.*

### G. <u>Procedural History</u>

As set forth above, Plaintiff commenced this action against Defendant by way of Complaint dated March 18, 2020, asserting violations of his rights under Title VII and the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.*  *See generally* Compl.  Khan's original Complaint was hastily filed at the beginning of the Covid-19 pandemic in New York and after speaking with the Court's *pro se* office regarding the pandemic and approaching filing deadline and did not contain many factual allegations.  *See generally* Compl.; Pl. Opp.  Khan was under the impression that the courthouse would close due to the pandemic, *see* Pl. Opp. at 3-4, and indicated that he intended to "amend [the Complaint] and add further facts later."  Compl. at 5.  On June 24, 2020, Khan requested an extension of time to serve the original Complaint, and further stated:

> Since I am representing myself I want to ensure that my amended complaint contains all of the relevant facts. I would also like to finalize my amended complaint so I can serve it instead of just serving the currently filed complaint[.]  The additional time should allow me to complete an amended complaint, file it with this Court, and serve it on the Defendants.

DE [7].  Plaintiff also submitted 12 pages of factual allegations that he intended to add to the Complaint.  This Court granted Khan's request on June 29, 2020 and extended his time to serve the Complaint "to and including August 31, 2020."  *See* June 29, 2020 Electronic Order.  On August 13, 2020, prior to serving Defendant with

---

[4] The parties have not provided the Court with Plaintiff's exact date of termination.

the Complaint, and apparently misunderstanding the Court's June 29 Order, Khan appended the abovementioned factual allegations to his Complaint, thus producing his First Amended Complaint. *See* FAC. On August 18, 2020, Plaintiff served the FAC on Defendant. *See* DE [16].

At a May 17, 2021 pre-motion conference, Judge Komitee directed Plaintiff to file a Second Amended Complaint by June 16, 2021 and encouraged him to consult with Hofstra Law School's *Pro Se* Legal Assistance Program (the "Clinic") for help doing so. *See* DE [25]. With some assistance from the Clinic, Khan filed the SAC on June 15, 2021, asserting claims for: (i) religious, racial, and national origin discrimination, in violation of Title VII; (ii) disparate treatment and hostile work environment in violation of Title VII; and (iii) disability discrimination and retaliation in violation of the Rehabilitation Act. *See generally* SAC.

On September 23, 2021, Defendant moved to dismiss the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), *see* Def. Mot. Judge Komitee referred Defendant's Motion to this Court for Report and Recommendation on March 8, 2022. *See* March 8, 2022 Referral Order. Khan opposed Defendant's Motion on March 14, 2022. *See* Pl. Opp. For the reasons set forth below, the Court respectfully recommends that Defendant's Motion be granted in part and denied in part, and that as to the dismissed claims, Khan be given leave to file a Third Amended Complaint that remedies certain deficiencies detailed below.

13

## II.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(1)

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).    To that end, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001).

Nevertheless, where subject matter jurisdiction is challenged, a court "may consider materials outside the pleadings, such as affidavits, documents and testimony." *Id.*; *see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89, n.8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1)…does not convert the motion into a motion for summary judgment under Rule 56."). District courts may consider these outside materials "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Core Care Health Services, Inc. v. Shalala*, No. 98-cv-5812, 1999 WL 124419, at *1 (E.D. Pa. Mar. 4, 1999) (quotations omitted).

**B. Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Nevertheless, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action," however, that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions."). "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

### C. *Pro Se* Pleadings

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted). The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that…*pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training"). The court, however, "need not argue a *pro se* litigant's case nor create a case for the *pro se*

which does not exist." *Morgikian v. Fid. Investments*, No. 20-cv-05724, 2022 WL 836950, at *2 (E.D.N.Y. Mar. 21, 2022) (internal citation omitted). Here, based on Judge Komitee's urging at the parties' May 17, 2021 conference, *see* DE [25], Khan sought out, and received, assistance from the Clinic in drafting his SAC and Plaintiff's Opposition, but drafted and filed all other pleadings and documents himself. *See* Def. Mem. at 1-3. After considering this limited assistance, the Court nevertheless concludes that the SAC and Plaintiff's Opposition are entitled to the liberal reading afforded to *pro se* litigants for the purpose of considering the instant motion. *See Ramon v. Corp. City of New York*, No. 17-cv-2307, 2019 WL 1306061, at *2 (E.D.N.Y. Mar. 21, 2019).

## III.   DISCUSSION

### A.   Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

Defendant first contends that the SAC should be dismissed pursuant to Rule 12(b)(1) because: (1) Plaintiff failed to serve the Complaint and thus could not amend it as of right; (2) the Complaint lacked any legal or factual allegations; (3) Khan did not seek leave of Court to file the FAC; and (4) the FAC is untimely because it asserts new factual and legal allegations that do not relate back to the Complaint, and the statute of limitations had expired before the FAC was filed. *See* Def. Mem. at 10-14.

### 1.   Plaintiff's Time to Serve the Complaint Should Be Extended

Initially, the Court finds that the circumstances surrounding Plaintiff's filing of, and intention to amend, the Complaint, as well as his request for an extension of time to serve the FAC are sufficient to establish good cause for an extension of time to serve the Complaint *nunc pro tunc*. Rule 4 governs the content, issuance, and

service of a summons. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). "Technical errors in a summons generally do not render service invalid," but "where the error actually results in prejudice to the defendant or demonstrates a flagrant disregard of Rule 4, service will be considered invalid and amendment need not be allowed." *Id.* at 65. Rule(4)(i) governs where, as here, the named defendant is a federal agency officer or employee. *See McCarthy v. Brennan*, No. 5:19-cv-1386, 2020 WL 5549072, at *4-5 (N.D.N.Y. Sept. 16, 2020), *aff'd sub nom. McCarthy v. DeJoy*, No. 20-cv-3600, 2022 WL 519180 (2d Cir. Feb. 22, 2022). Moreover, whether a federal defendant is sued individually or in an official capacity, a plaintiff who seeks to assert a claim against a federal officer or employee must serve the named defendant *and* the United States. *See* Fed. R. Civ. P. 4(i)(2)-(3). To properly effect service, a plaintiff must:

> (A) (i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought – or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk – or
>
> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
>
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i)(1). If a defendant is not properly served "within 90 days after the complaint is filed," the Court "must" dismiss the action without prejudice against the unserved defendant(s), "or order that service be made within a specified time." Fed.

R. Civ. P. 4(m).  However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *See id.*  "The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant." *McCarthy*, 2020 WL 5549072, at *6 (quoting *George v. Professional Disposables Intl., Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016)).  To establish good cause, "a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." *Spinale v. United States*, No. 03-cv-1704, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005), *aff'd sub nom. Spinale v. Ball*, 352 Fed. App'x 599 (2d Cir. 2009); *accord George*, 221 F. Supp. 3d at 432.

Good cause does not exist where the plaintiff, upon learning that a defendant was not properly served, fails either to serve that defendant again within the time remaining under Rule 4(i) or to seek additional time within which to do so.  *George*, 221 F. Supp. 3d at 432-33 ("Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay, and the court should look to whether the plaintiff was diligent in making reasonable efforts to effect service.").  That being said, even in the absence of good cause, a court "h[as] the discretion to grant an extension of time to serve the defendant." *Di Pompo v. Mendelson*, No. 21-cv-1340, 2022 WL 1093500, at *4 (S.D.N.Y. Apr. 7, 2022)  (quoting *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007)).  To obtain a discretionary extension absent a showing of good cause, the plaintiff "must ordinarily advance some colorable excuse for neglect." *Deptula v. Rosen*, 558 F. Supp. 3d 73, 85

19

(S.D.NY. 2021) (internal quotation marks and citations omitted).    Courts then "balance justifiable excuses offered by the plaintiff, the length of the delay, and any prejudice to either party."  *Spinale*, 2005 WL 659150, at *4.

Applying these standards, the Court concludes that Plaintiff has established good cause sufficient to defeat this prong of Defendant's Motion.  As a threshold issue, the parties do not dispute that Plaintiff failed to serve Defendant with the Complaint before serving him with the FAC.  *See* DE [16] (letter from Khan enclosing: (i) proof of personal service upon Defendant; and (ii) proof of mailing of FAC to the Office of the United States Attorney General).    Plaintiff therefore failed to timely serve Defendant with the Complaint under Rule 4(i).

Nevertheless, the Court determines that Plaintiff has "good cause" for this failure, such that the time for service should be extended, *nunc pro tunc*, up to and including August 13, 2020.  Multiple New York state and federal courts have permitted – and excused – violations of filing and service deadlines, where such delays were attributable to natural conditions outside of a plaintiff's control.  *See Park v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-1982, 2021 WL 7159903, at *7 (E.D.N.Y. Oct. 20, 2021), *report and recommendation adopted as mod.*, 2022 WL 247934 (E.D.N.Y. Jan. 27, 2022); *Para v. Nicholson*, No. 06-cv-6492T, 2009 WL 1076314, at *2-3 (W.D.N.Y. Apr. 21, 2009); *Lewis v. Rutkovsky*, 153 A.D.3d 450, 453-54, 58 N.Y.S.3d 391, 394-95 (1st Dep't 2017).  Here, Plaintiff directly attributes his delay in amending the Complaint and serving it on Defendant to his unexpected hospitalization and his parents' Covid-19 diagnoses and ensuing sicknesses –

20

circumstances unquestionably beyond Khan's control.  *See* Pl. Opp. at 3-4.  The Court thus recommends that Plaintiff's deadline to serve Defendant with the Complaint be extended, *nunc pro tunc*, to August 13, 2020.

### 2.  Plaintiff's Amendment of the Original Complaint

Based on the above, the Court recommends denial of Defendant's Rule 12(b)(1) motion because Khan amended the Complaint as of right via the First Amended Complaint, and did not need the Court's permission to do so.  Pursuant to Fed. R. Civ. P. 15, a party may amend its pleading once as a matter of course within 21 days after serving it.  *See* Fed. R. Civ. P. 15(a)(1)(A).  Additionally, Rule 15(a)(2) instructs that "court[s] should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Specifically, the Second Circuit has held that liberal application of Rule 15(a) is warranted with respect to *pro se* litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." *See Derti v. Barg*, No. 19-cv-10215, 2021 WL 4776359, at *5 (S.D.N.Y. Oct. 12, 2021) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotations omitted)).

Here, assuming the deadline for Khan to serve the Complaint is extended to and including August 13, 2020, he would have been permitted to amend the Complaint as of right at any point up to and including September 3, 2020. Accordingly, because Plaintiff amended the Complaint on August 13, and served Defendant with the First Amended Complaint on August 18, 2020, the amendment was proper under Rule 15(a), and did not require the Court's permission.  *See* Fed. R. Civ. P. 15(a)(1)(A).  Moreover, Plaintiff's unexpected hospitalization and his parents'

Covid-19 diagnoses and subsequent sicknesses are circumstances for which leave to amend would be appropriate for a *pro se* litigant under Rule 15(a)(2) in any context. *See Derti*, 2021 WL 4776359, at *5. For these reasons, the Court respectfully recommends that Defendant's Rule 12(b)(1) motion be denied.

Notwithstanding the above recommendation, the Court further concludes that the Complaint and FAC contain similar legal and factual allegations such that, even if the FAC were to be found to have been untimely filed, it would sufficiently "relate back" to the filing of the original Complaint, and recommends denial of Defendant's Rule 12(b)(1) motion for this additional reason. Under Rule 15's relation back doctrine, an otherwise untimely amendment will survive if it is deemed to "relate back" to the original complaint. *See Gudanowski v. Burrell*, No. 20-cv-111, 2021 WL 3887612, at *3-4 (S.D.N.Y. Aug. 31, 2021); *Sutton v. Rodriguez*, No. 18-cv-1042, 2021 WL 2894834, at *3 (S.D.N.Y. Jul. 9, 2021) (citing Fed. R. Civ. P. 15(c)(1)). Moreover, even if new allegations go beyond amplification, the original pleading will be found to give the defendant fair notice of material subsequently raised in an amended pleading where there exists a "common core" of operative facts linking the amendments and the original complaint. *Gabbidon v. Lee*, No. 18-cv-2248, 2020 WL 2129391, at *5 (S.D.N.Y. May 5, 2020).

In the Complaint's claims section, Plaintiff checked the boxes for "Failure to accommodate my disability," 'Unequal terms and conditions of my employment," and "Retaliation." *See* Compl. at 4. Khan also marked the bases for his discrimination claims, namely, "race," "gender," "religion: Muslim," "national origin: Guyanese," and

"disability or perceived disability." *Id.* The Notice of Right to Sue was also attached to the Complaint. *See* Notice of Right to Sue. The First Amended Complaint similarly alleges that Defendant took adverse discriminatory actions against Khan within the Facility, and Plaintiff again referenced and attached the Notice of Right to Sue. *See generally* FAC. The additional information set forth in the FAC elaborated upon and amplified the claims set forth in the original Complaint and the claims in the earlier Notice of Charge, and all of the allegations arose out of a common core of operative facts. *Gabbidon*, 2020 WL 2129391, at *5. For these reasons, the Court concludes that the FAC sufficiently "relates back" to the Complaint under Rule 15(c)(1), and respectfully recommends that Defendant's Rule 12(b)(1) motion be denied in its entirety on this alternate basis.

### B. Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Defendant next seeks dismissal of the SAC in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). *See* Def. Mem. at 15-25. For the reasons set forth below, the Court respectfully recommends that Defendant's Motion be granted in part and denied in part, and as to those claims that are dismissed, Khan be granted leave to file a Third Amended Complaint to remedy the deficiencies detailed below.

#### 1. Plaintiff's Title VII Causes of Action

Initially, Khan brings claims pursuant to Title VII for religious discrimination, disparate treatment, retaliation, and hostile work environment. *See generally* SAC. Title VII "aims to remedy discrimination in the workplace on the basis of race, color, religion, sex or national origin…." *Harrison v. Potter*, 323 F. Supp. 2d 593, 599 (S.D.N.Y. 2004). The statute provides, in relevant part:

> It shall be an unlawful employment practice for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). A Title VII claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973). *Bentley-Ammonds v. Northwell Health, Inc.*, No. 21-cv-835, 2022 WL 893716, at *1 (2d Cir. Mar. 28, 2022). Under this framework, a plaintiff has the initial burden to establish a *prima facie* case of discrimination. *See id.*; *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824. A plaintiff can establish a *prima facie* case by alleging that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *See Bentley-Ammonds*, 2022 WL 893716, at *1. If all elements are satisfied, the burden shifts to the employer to "proffer a legitimate non-discriminatory reason for its actions…." *Chen v. Stony Brook Univ. Advancement*, No. 20-cv-4250, 2022 WL 289317, at *1 (2d Cir. Feb. 1, 2022) (quoting *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014)). Then, if this threshold is met, the plaintiff must assert facts "establish[ing] that the defendant's reason is in fact pretext for unlawful discrimination." *Id.* Although an employment discrimination plaintiff need not plead a *prima facie* case of discrimination, "dismissal is nevertheless appropriate where the plaintiff fail[s] to allege even the basic elements of a discriminatory action claim." *Schultz v. County of Suffolk*, No. 19-cv-0925, 2020 WL 7699944, at *9 (E.D.N.Y. Sept. 4, 2020), *report and*

*recommendation adopted*, 2020 WL 7041090 (E.D.N.Y. Nov. 30, 2020) (internal citations omitted).

> **a.** <u>Plaintiff's Failure to Fully Exhaust His Administrative Remedies</u>[5]

Defendant first contends that Plaintiff's Title VII claims based on allegedly discriminatory conduct that occurred prior to January 1, 2019, must be dismissed with prejudice, because Khan failed to exhaust his administrative remedies. *See* Def. Mem. at 16-17. It is undisputed that an aggrieved federal employee who brings claims under Title VII "must initiate contact with a[n][EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1), and that a litigant's failure to do so, renders his claims fatally defective. *See Garcia*, 2022 WL 912234, at *8 (internal citation omitted). This administrative exhaustion requirement applies to *pro se* and counseled plaintiffs alike. *See Quinones v. New York City*, No. 19-cv-05400, 2020 WL 5665142, at *4 (S.D.N.Y. Aug. 17, 2020), *report and recommendation adopted*, 2020 WL 6901340 (S.D.N.Y. Nov. 23, 2020).

Here, Defendant contends – and Plaintiff does not dispute – that Khan's first contact with a USPS EEO counselor occurred on February 15, 2019. *See* Def. Mem. at 16-17. Based on this date, the earliest point after which he could bring claims based upon allegedly discriminatory conduct would be January 1, 2019. *See* 29 C.F.R. § 1614.105(a)(1); *Garcia*, 2022 WL 912234, at *8. Neither Plaintiff's pleadings nor

---

[5] While appropriately brought as part of motions to dismiss pursuant to Rule 12(b)(1), allegations of failures to exhaust administrative remedies are also properly considered when analyzing motions to dismiss brough pursuant to Rule 12(b)(6). *See Garcia v. Regan*, No. 19-cv-8482, 2022 WL 912234, at *8 (S.D.N.Y. Mar. 28, 2022).

Defendant's Motion, however, assert that any discriminatory conduct occurred prior to January 1, 2019, thus rendering this prong of Defendant's Motion moot.  *See generally* SAC; Def. Mem.  For this reason, the Court respectfully recommends that this component of Defendant's Motion be denied.

### b. Title VII Discrimination & Disparate Treatment (Counts I, II & VI)

Here, based on the allegations set forth in the Complaint, FAC (including the Notice of Charge), SAC, and Plaintiff's Opposition, Khan has sufficiently established the elements of his religious discrimination claim, but failed to do so for his race and national origin discrimination claim, under Title VII.  A plaintiff bringing a Title VII discrimination claim for disparate treatment must show that:  (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.  *See Hamilton v. City of New York*, No. 18-cv-4657, 2021 WL 4439974, at *7 (E.D.N.Y. Sept. 28, 2021) (internal citation omitted); *see also James v. Borough of Manhattan Cmty. Coll.*, No. 20-cv-10565, 2021 WL 5567848, at *5 (S.D.N.Y. Nov. 29, 2021) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).  At the pleading stage, Plaintiff must plausibly allege that:  (1) his employer took adverse action against him; and (2) his religion, race, or national origin was a motivating factor in the employment decision.  *Stalling v. T3 Trading Group, LLC*, No. 22-cv-2296, 2022 WL 1138425, at *3 (S.D.N.Y. Apr. 15, 2022).

Initially, Plaintiff has adequately pled membership in a protected class, *see* SAC ¶ 8 (Plaintiff is "an Asian Indian, Guyanese, Muslim male."), and pled facts establishing that he suffered an adverse employment action. *See id.* at ¶ 18 (After their incident, Boffa called law enforcement, who then arrested Plaintiff for criminal trespass, removed him from the Facility "in handcuffs[,] in front of his coworkers and customers," and subsequently "charged [Khan] with criminal trespass in the third degree…."); ¶ 66 (After Plaintiff's arrest, Defendant "suspended and ultimately terminated Mr. Khan's employment…").   In addition to these allegations, Khan alleges that:  (i) while he was instructed to lower the volume of or turn off his prayer recordings on January 8, 2019, and subsequently arrested, suspended, and terminated for failing to do so; (ii) a non-Muslim USPS employee who, at a later date, "played a loud video on his phone," was neither reprimanded nor "suffered [any] of the consequences that Plaintiff" endured. *See* SAC ¶ 71.  While Plaintiff has only alleged this single incident of disparate treatment, it is sufficient to establish the necessary "inference of discrimination" at this stage.  *See Hamilton*, 2021 WL 4439974, at *7; *see also James*, 2021 WL 5567848, at *5 (citing *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (A plaintiff attempting to show that his employer treated him "less favorably than a similarly situated employee outside his protected group," must show that he was "similarly situated in all material respects to the individuals with whom [he] seeks to compare h[imself].")).   Moreover, circumstances that may "give rise to an inference of discriminatory motive" include "preferential treatment given to employees outside the protected class." *Murtha v.*

*New York State Gaming Comm'n*, 2019 WL 4450687, at *6 (S.D.N.Y. Sept. 17, 2019) (quoting *Chertkova v. Conn. Gen Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).  Here, Plaintiff's allegations that he was directed to turn off his recording precisely because of its religious nature – and subsequently faced adverse employment consequences for failing to do so – while his non-Muslim colleague was permitted to listen to music out loud and without consequence, *see* SAC ¶ 71, satisfy the Second Circuit's requirement that he plead that the USPS treated him "less favorably" than his non-Muslim USPS colleague who allegedly faced no repercussions when he listen to music out loud, and that both were "similarly situated" in that they were both employed by the USPS and listened to recordings out loud at work.  *See James*, 2021 WL 5567848, at *5.  For these reasons, the Court concludes that Khan has pled facts sufficient to establish his Title VII religious discrimination and disparate treatment causes of action.

Because Plaintiff has carried his initial burden, the USPS must "proffer a legitimate non-discriminatory reason" for Khan's adverse treatment.  *See Chen*, 2022 WL 289317, at *1.  To do so, Defendant relies on the declaration of Southampton USPS Postmaster Brian Sanders.  *See generally* Declaration of Brian Sanders ("Sanders Decl."), DE [29-2].  Specifically, Sanders avers that Khan was:  (i) arrested on January 8, 2019, because he not only refused to follow Boffa's directions to turn off his recording or use headphones to listen to the prayers, but Plaintiff also defied the instructions of law enforcement to leave the Facility, *see id.* at ¶¶ 16-17; (ii) suspended by Boffa because he "was being uncooperative" during the January 8

incident, *see id.* at ¶ 17; and (iii) terminated because of his repeated failures to communicate and engage with the Facility's leadership regarding the January 8 incident, recurring absences after the OOP's vacatur, and his defiance throughout the DRAC inquiry. *See id.* at ¶¶ 18-29. Based on these allegations, the Court concludes that Defendant has sufficiently offered legitimate non-discriminatory reasons for each of Khan's arrest, suspension, and termination. *Chen*, 2022 WL 289317, at *1.

Given Defendant's proffered non-discriminatory reasons, Plaintiff must now "establish that the defendant's reason is in fact pretext for unlawful discrimination." *Id.* In this context specifically, the Second Circuit has recognized that the fourth criteria for a *prima facie* case and the third step of *McDonnell Douglas* often overlap, meaning that a court's assessment of the last component of a plaintiff's *prima facie* case and of his evidence of pretext or discrimination at step three "tend to collapse as a practical matter under the *McDonnell Douglas* framework." *Henek v. CSC Holdings, LLC*, 449 F. Supp. 3d 35, 42 (E.D.N.Y. 2020) (quoting *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119, n.1 (2d Cir. 2002)).

Based on this caselaw, the Court concludes that Plaintiff has successfully established that Defendant's adverse employment actions against him were pretextual. As noted above, Khan's allegations that: (i) he was instructed to lower the volume of or turn off his prayer recordings on January 8, 2019, and subsequently arrested, suspended, and terminated for failing to do so; while (ii) a non-Muslim USPS employee who, at a later date, "played a loud video on his phone," was neither reprimanded nor "suffered [any] of the consequences that Plaintiff" endured, *see* SAC

29

¶ 71, are sufficient to establish the necessary "inference of discrimination" in his *prima facie* case. *See Hamilton*, 2021 WL 4439974, at *7. These same allegations are also sufficient to establish the necessary pretext and defeat Defendant's Motion. *See Henek*, 449 F. Supp. 3d at 42; *see also Tatum v. Univ. of Hartford*, No. 3:19-cv-01546, 2021 WL 4224721, at *7, n.4 (D. Conn. Sept. 16, 2021) (quoting *Collins*, 305 F.3d at 119). Accordingly, the Court respectfully recommends that Defendant's Motion be denied as to Plaintiff's Title VII religious discrimination and claim.

Notwithstanding the above, the Court concludes that Plaintiff has failed to plead facts sufficient to carry the initial burden as to his Title VII Race and National Origin discrimination cause of action. Indeed, Khan supplies no factual support for his claim that Defendant "suspended, and later terminated [Plaintiff's] employment, because of his Asian-Indian race and because of his Guyanese national origin." SAC ¶ 92. While the lack of facts in support of this claim is insufficient to sustain Khan's pleading burden at this stage, *see Chen*, 2022 WL 289317, at *1., the Court is not persuaded that Plaintiff would be unable to supply the necessary factual support if given the opportunity. The Court thus respectfully recommends that Defendant's Motion be granted as to Plaintiff's Title VII race and national origin discrimination cause of action, but that it be dismissed without prejudice, and with leave to replead.

  **c.** Retaliation (Count IV, in part)

Khan has likewise sufficiently alleged a retaliation cause of action under Title VII. A retaliation claim under Title VII also follows the *McDonnell Douglas* burden-shifting framework. *See Sanossian v. Val. Stream Cent. High School Dist.*, No. 16-

30

cv-4697, 2022 WL 976814, at *11 (E.D.N.Y. Feb. 16, 2022), *report and recommendation adopted*, 2022 WL 970807 (E.D.N.Y. Mar. 31, 2022). To establish a *prima facie* claim for retaliation, a plaintiff must plead that: "(1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action*; and (4) there was a causal connection between the protected activity and that adverse action." *Id.* A plaintiff must also demonstrate that "a reasonable employee would have found the challenged action materially adverse, which in th[e retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at *3 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)). Protected activity under Title VII's anti-retaliation provision "includes both opposing discrimination proscribed by the statute and…participating in Title VII proceedings." *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 231 (E.D.N.Y. 2016) (citation and quotation marks omitted).

Here, the Court concludes that Khan has pled the facts necessary to sustain his initial pleading burden under the *McDonnell Douglas* framework. Specifically, Khan has adequately alleged that: (i) he engaged in protected behavior when he filed his formal EEO complaint in April 2019, *see* SAC ¶¶ 4-5; (ii) the USPS initiated its DRAC inquiry into his medical marijuana use within three weeks of the EEO complaint's filing, as direct retaliation for filing that complaint, *see id.* at ¶¶ 40-47; (iii) the USPS renewed its request for information regarding Khan's medical marijuana prescription in June 2019 and sought this information from Plaintiff

within three days, *see id.* at ¶ 48; (iv) forced Khan to sit for a DRAC hearing, during which he was questioned extensively regarding his medical marijuana use, despite his prescription, *see id.* at ¶¶ 55-57; and (v) his August 2020 suspension and termination constitute materially adverse employment actions. *See id.* at ¶ 79. As a result, Khan has satisfied his initial pleading burden as to his Title VII retaliation claim, because of the close temporal proximity between: (i) the filing of his formal EEO complaint; (ii) the USPS's initiation of its DRAC inquiry into Plaintiff's medical marijuana prescription and use; (iii) Khan's DRAC hearing; and (iv) Plaintiff's subsequent suspension and termination. *See Hall v. Jewish Home & Hosp.*, No. 16-cv-9881, 2017 WL 5665660, at *5 (S.D.N.Y. Nov. 15, 2017) (finding that a causal connection in retaliation claims can be established "by showing that the protected activity was followed closely by discriminatory treatment"). In reaching this conclusion, the Court acknowledges that it is possible that the USPS's investigation into Khan's request for a medical accommodation was part of a legitimate business practice. It is simply impossible to tell from the pleadings. Accordingly, the Court believes that discovery on this issue is appropriate, and that this issue may be revisited on summary judgment.

Khan having satisfied his initial burden, the USPS must now offer a legitimate, non-retaliatory reason for its actions taken against Khan. *See Sanossian*, 2022 WL 976814, at *11. Here, Defendant again relies on the Sanders Declaration, through which Sanders contends that: (i) the DRAC inquiry into Plaintiff's medical marijuana use predated the January 8, 2019 incident, in that Khan explicitly

requested an accommodation from the USPS to be able to use medical marijuana within the Facility, *see id.* at ¶¶ 8-10; (ii) Plaintiff only received the April 2019 DRAC follow-up letter because he failed to provide the previously requested information, *see id.* at ¶ 24; and (iii) Khan's DRAC hearing was scheduled for September 2019 so the inquiry into his request could be closed, and a decision rendered. *See id.* at ¶¶ 26-27. Based on these allegations, the Court concludes that Defendant has sufficiently offered legitimate non-discriminatory reasons for each of Khan's arrest, suspension, and termination. *See Sanossian*, 2022 WL 976814, at *11.

Because Defendant has proffered the above non-retaliatory reasons for Khan's adverse employment actions, Plaintiff must now show that Defendant's reasoning is in fact pretext for unlawful retaliation. Khan has again done so. Indeed, numerous courts within this Circuit have found a plaintiff's inferential showing of retaliation in his *prima facie* case to satisfy both: (i) his *prima facie* pleading requirement; and (ii) "the subsequent requirement that a proffered legitimate reason for an employment action" is pretextual under the *McDonnell Douglas* framework. *Gordon v. City of New York*, No. 14-cv-6115, 2018 WL 4681615, at *8 (S.D.N.Y. Sept. 28, 2018) (quoting *Collins*, 305 F.3d at 118, n.1).

For this reason, the Court concludes the close temporal proximity of Plaintiff's protected activity and multiple incidents of alleged adverse employment actions taken against him, are sufficient to establish the necessary pretext to defeat Defendant's Motion. *See Gordon*, 2018 WL 4681615, at *17 (quoting *Augustine v. Cornell Univ.*, No. 14-cv-7807, 2018 WL 1474402, at *11 (S.D.N.Y. Mar. 26, 2018))

("[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."). Accordingly, the Court recommends that Defendant's Motion be denied as to Plaintiff's Title VII retaliation claim.

### d. Hostile Work Environment (Count V)

Defendant next seeks dismissal of Khan's Title VII hostile work environment claim. A Title VII hostile work environment claim requires a showing that: (1) the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"; and (2) a specific basis exists for imputing the objectionable conduct to the employer." *Lopez v. White Plains Hospital, et al.*, No. 19-cv-6263, 2022 WL 1004188, at *15 (S.D.N.Y. Mar. 30, 2022) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Watson v. Richmond Univ. Med. Ctr.*, 408 F. Supp. 3d 249, 265-66 (E.D.N.Y. 2019). "It is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable…only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11-cv-3154, 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (alterations omitted) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Significantly, "excessive criticism and rudeness do not constitute a hostile work environment." *Ramirez v. Temin & Co.*, No. 20-cv-6258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

The Second Circuit has held that "[p]roving the existence of a hostile work environment involves showing both 'objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'" *Feingold v. New York,* 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Alfano*, 294 F.3d at 374). "[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility[,] or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018).

Here, Khan's hostile work environment claim satisfies the above pleading requirements because he contends that: (i) he was arrested, suspended, and subsequently terminated by the USPS for playing a prayer recording out loud from his phone on January 8, 2019; and (ii) the USPS took out the OOP against him, and failed to notify him of its vacatur, leaving him out of work for months, *see* SAC ¶¶ 20-27, 32, 62, and the parties do not dispute that Khan's first contact with a USPS EEO counselor occurred on February 15, 2019. *See* Def. Mem. at 16-17. Based on these facts, the Court concludes that Plaintiff's above alleged facts are sufficient to give rise to a situation where an objective person would find the environment in which he worked hostile or abusive, and Khan subjectively found them to be hostile and

abusive, thus establishing Plaintiff's Title VII hostile work environment cause of action. *See Jackson-Lipscomb v. City of New York*, No. 17-cv-10093, 2022 WL 953048, at *5 (S.D.N.Y. Mar. 30, 2022) (quoting *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 156 (2d Cir. 2012) (internal quotation marks and citations omitted)); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019). For these reasons, the Court respectfully recommends that Defendant's Motion be denied as to this claim.

### 2. Plaintiff's Rehabilitation Act Causes of Action

Plaintiff next brings causes of action against Defendant for disability discrimination and retaliation under the Rehabilitation Act. *See generally* SAC. Pursuant to Section 504 of the Rehabilitation Act, an "otherwise qualified individual with a disability," shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

#### a. Disability Discrimination (Count III)

Employment discrimination claims brought under the Rehabilitation Act are also analyzed using the *McDonnell Douglas* burden-shifting framework. *See Campbell v. IPsoft Inc.*, No. 18-cv-10684, 2021 WL 4248861, at *21 (S.D.N.Y. Sept. 17, 2021); 29 U.S.C. § 794(d). To establish a *prima facie* case of disability discrimination under the Rehabilitation Act, a plaintiff must demonstrate that: (1) he is disabled under the Rehabilitation Act; (2) he was "otherwise qualified" for his position; (3) he was "excluded from the position solely because of [his disability]"; and

(4) "the program sponsoring the position received federal funding." *Fink v. New York City Dep't of Pers.*, 855 F. Supp. 68, 71 (S.D.N.Y. 1994), *aff'd,* 53 F.3d 565 (2d Cir. 1995).

Where a Rehabilitation Act employment discrimination claim turns on an alleged failure to provide a reasonable accommodation, a plaintiff must demonstrate that:  (1) he is disabled; (2) the employer was on notice of his or his disability; (3) "with reasonable accommodation, plaintiff could perform the essential functions of the job at issue"; and (4) the employer has refused to provide a reasonable accommodation.  *See Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (citing *McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 97 (2d Cir. 2009)). Although a public entity must make "reasonable accommodations," it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice.  *See McElwee*, 700 F.3d at 641 (citing *Fink,* 53 F.3d at 567).  If all elements of a *prima facie* case are satisfied, the employer must "proffer a legitimate non-discriminatory reason for its actions...."  *See Campbell*, 2021 WL 4248861, at *21.  If the employer's burden is met, the plaintiff must then "establish that the defendant's reason is in fact pretext" for the alleged discrimination.  *Id.*

Here, Khan satisfies the requisite pleading requirements.  Initially, the parties do not dispute that:  (i) Plaintiff is disabled under the Rehabilitation Act; and (ii) Khan formally requested a reasonable accommodation for his disability, to be permitted to use medical marijuana.  *See SAC ¶¶ 45, 74.  Moreover, Khan has sufficiently shown that the USPS "refused to provide [him with] a reasonable

accommodation," *Natofsky*, 921 F.3d at 352, by way of his allegations that: (i) on April 12, 2019, nine days after he filed a formal EEO complaint, the DRAC initiated a reasonable accommodation review by requesting medical information regarding his disability and need for medical marijuana, *see* FAC ¶ 47; and (ii) although Khan provided some of the requested medical documentation, the DRAC still insisted on holding a hearing – according to Plaintiff, without a "legitimate purpose" and as retribution for filing his EEO complaint – in which Khan was harassed and unnecessarily questioned regarding, among other topics, "confidential aspects about [his] medical history." *See* SAC ¶¶ 48-58. Plaintiff further alleges that he was never provided with a reasonable accommodation based on his request. *See id.* Based on these allegations, the Court concludes that Plaintiff has met his initial burden as to this claim. *See Natofsky*, 921 F.3d at 352.

In light of the above, Defendant must assert a legitimate non-discriminatory reason for its actions, *see Chen*, 2022 WL 289317, at *1, and again relies on the Sanders Declaration. Specifically, Sanders avers that Khan completely withdrew his medical marijuana accommodation request by letter dated December 25, 2018. *See* Sanders Decl. ¶ 10. A review of this letter, however, belies Defendant's position, because Plaintiff – through the letter – only intended to postpone his DRAC hearing until he received a response from the USPS "concerning [his] use of medical marijuana and working[,]" and did not appear to fully withdraw his request for an accommodation. *See* Sanders Decl., Exhibit ("Ex.") 4, DE [29-3]. Sanders also contends that the above actions were taken against Plaintiff in order to evaluate

whether he could safely operate a USPS vehicle and were not motivated by a discriminatory intent. *See id.* at ¶¶ 4, 7. Based on this assertion, the Court concludes that Defendant has sufficiently offered legitimate non-discriminatory reasons for the DRAC's investigation of Khan's request for a reasonable accommodation. *See Campbell*, 2021 WL 4248861, at *21.

Because Defendant has proffered the above non-discriminatory reason for Khan's adverse employment actions, Plaintiff must now show that Defendant's reasoning is in fact pretext for disability discrimination. Khan has again done so. Indeed, as noted above, Plaintiff's alleges that: (i) on April 12, 2019, nine days after he filed a formal EEO complaint, the DRAC initiated a belated reasonable accommodation review of his disability and need for medical marijuana, *see* FAC ¶ 47; and (ii) although Khan provided some of the requested medical documentation, the DRAC still insisted on holding a hearing as retribution for filing his EEO complaint, in which Khan was harassed and unnecessarily questioned regarding, among other topics, his medical history. These allegations are sufficient to are sufficient to establish the necessary pretext and defeat Defendant's Motion. *See Tatum*, 2021 WL 4224721, at *7, n.4 (quoting *Collins*, 305 F.3d at 119). Accordingly, the Court respectfully recommends that Defendant's Motion be denied as to this claim.

### b.  Retaliation (Count IV, in part)

Rehabilitation Act retaliation claims are similarly analyzed under the *McDonnell Douglas* burden-shifting framework. *See Dodd v. City Univ. of New York*,

489 F. Supp. 3d 219, 245-46 (S.D.N.Y. 2020) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).   To establish a *prima facie* case of retaliation, Khan must demonstrate that:  (1) he engaged in an activity protected by the Rehabilitation Act; (2) the USPS was aware of that activity; (3) the USPS took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity.  *See Weixel*, 287 F.3d at 148.  "A plaintiff's burden at this *prima facie* stage is *de minimis*."  *Treglia*, 313 F.3d at 719.  But he cannot meet it with "purely conclusory allegations..., absent any concrete particulars."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

Applying these standards, the Court again finds that Plaintiff has adequately alleged his retaliation claim, to the extent he seeks to bring it under the Rehabilitation Act.  Applying the *McDonnell Douglas* burden-shifting framework to this cause of action, and for the reasons set forth above, the Court concludes that Khan has successfully established the necessary causal connection between his alleged protected conduct and his adverse employment actions.  *See Livingston*, 2005 WL 2305007, at *15-16.  For these reasons, the Court respectfully recommends that Defendant's Motion be denied as to Plaintiff's Rehabilitation Act retaliation claim.

### C. <u>Leave to Replead</u>

Given that Plaintiff is proceeding *pro se*, and because it is not certain at this juncture that further amendment would be futile, the Court recommends that Khan be granted an additional opportunity to replead his race and national origin discrimination claim in a Third Amended Complaint, consistent with the above

40

analysis. *See Durand v. Excelsior Care Grp. LLC*, No. 19-cv-2810, 2020 WL 231591, at *24 (E.D.N.Y. Dec. 9, 2020) (permitting *pro se* plaintiff to file a third amended complaint); *Sanderson v. Leg Apparel LLC*, No. 19-cv-8423, 2020 WL 734742, at *35-36 (S.D.N.Y. Dec. 14, 2020) (same).

## IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendant's Motion be granted in part and denied in part, and that Plaintiff's race and national origin discrimination claim be dismissed without prejudice, and that Plaintiff be given the opportunity to file a Third Amended Complaint as to this cause of action.  Defendant's Motion should be denied in all other respects.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Defendant by electronic filing on the date below.  Defendant is directed to promptly serve a copy of this Report and Recommendation on Plaintiff and file proof of service.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
               May 19, 2022

                             /s/ Steven I. Locke
                             STEVEN I. LOCKE
                             United States Magistrate Judge